IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WENDY A. BELL O'TOOLE, professionally known as WENDY BELL, | Civil Action |
| Plaintiff, | No. |
| v. | |
| HEARST STATIONS, INC., t/d/b/a WTAE-TV, | |
| Defendant. | JURY TRIAL DEMANDED |

## CIVIL COMPLAINT

Plaintiff Wendy A. Bell O'Toole, professionally known as Wendy Bell, by undersigned counsel files this Civil Complaint and in support alleges the following:

### I. Jurisdiction

1.   The Jurisdiction of this Court is invoked pursuant to Section 1 of the Civil Rights Act of 1866, 42 U.S.C. §1981 and 28 U.S.C §§1343(a)(3).

### II. The Parties

2.   Plaintiff Wendy A. Bell O'Toole, (hereafter "Ms. Bell) is a white adult individual who resides at 311 South Murtland Street, Pittsburgh, PA 15208. She does business under the professional name of Wendy Bell. At all times relevant, Ms. Bell was employed by Defendant as an Anchor/Reporter with its news department.

3.   Defendant Hearst Television Inc., t/d/b/a WTAE TV, is a corporation which operates a television station licensed by the Federal Communications Commission. It is located in the Western District of Pennsylvania at 400 Ardmore Boulevard, Pittsburgh, Pennsylvania 15221. At all times relevant to this action, Defendant was Ms. Bell's employer.

1

4. Ms. Bell has worked as an Anchor and Reporter for Defendant from September 14, 1998 until March 22, 2016. She was the main news anchor at WTAE-TV and had acted in that capacity for nearly 10 years. She anchored the 5 p.m.; the 5:30 p.m. 6 p.m. and 11 p.m. newscasts from Mondays through Fridays.

5. At all times relevant, she performed her duties in an exceptional manner. Indeed, her employer repeatedly has noted that she is a "model anchor and newsroom leader."

6. According to Defendant, Ms. Bell was always engaged and looking for ways to make its newscast better. She was "always willing to work long hours to add to her contributions during a newscast. She works extremely well with news management and producers and also mentors less experienced anchors and reporters."

7. Throughout her lengthy career, Defendant repeatedly praised Ms. Bell for her professional expertise as well as her judgment and work ethic.

8. Ms. Bell's work and reputation in Defendant's target audience area was so good that Defendant encouraged Ms. Bell to use social media to communicate with that target audience. Indeed, in Defendant's last formal performance apprisal of Ms. Bell, Defendant noted she has "launched a Facebook page for her work at the station and "this has proven to be a great platform for her." According to Defendant, Ms. Bell "is very good about engaging her audience [on that Facebook page]"

9. In her last performance review, Defendant rated Ms. Bell as "often exceeding expectations in the way she embodies [Defendant's] core values." According to Defendant, Ms. Bell "communicates effectively and respectfully, collaborates and contributes enthusiastically; invests in the success of others and the team and embraces and supports change."

10. Defendant was not alone in its recognition of Ms. Bell's performance. She has won more than 20 regional Emmy awards for broadcast excellence during her lengthy career.

11. As part of her duties as a reporter and anchor, Defendant encouraged Ms. Bell to communicate over social media about the stories she covered.

12. On March 9, 2016, Ms. Bell covered a shooting in Wilkinsburg, Pennsylvania that resulted in six deaths.

13. Following those shootings, Ms. Bell wrote on the Defendant-sponsored Facebook page that "you needn't be a criminal profiler to draw a mental sketch of the killers who broke so many hearts two weeks ago...they are young black men, likely in their teens or early 20s."

14. She then wrote about a young African-American man, this one a worker she saw in a South Side Pittsburgh restaurant. She wrote of praising the man, and added "I wonder how long it has been since someone told him he was special."

15. The Facebook postings resulted in considerable controversy, and complaints from some purporting to speak on behalf of the African American community..

16. On or about March 30 Defendant 's management met with an organization known as the Pittsburgh Black Media Federation to discuss Ms. Bell and issues of racial diversity.

17. That very same day, Defendant fired Ms. Bell, and publically announced it did so because her comments on Defendant's Facebook page were "inconsistent with the company's ethics and journalistic standards."

18. Defendant fired Ms. Bell by providing information about the discharge to news outlets before even informing Ms. Bell that she had been discharged.  The discharge story was leaked to the news media at 11:51 a.m.  Defendant did not tell Ms. Bell it was firing her until 2 p.m.

the same day.

19. Had Ms. Bell written the same comments about white criminal suspects or had her race not have been white, Defendant would not have fired her, much less disciplined her.

20. However, because Defendants interpreted Ms. Bell's comments to be racially pejorative and because Ms. Bell was white, Defendant interpreted the Facebook posting to be "inconsistent with [its] ethics" and "journalistic standards."

21. Defendant consistently downplays misconduct by similarly situated reporters and anchors because of their race or gender.

22. For example, Defendant's African American Sports Director, and 5 p.m. news anchor, Andrew Stockey was not disciplined at all for making lewd comments to interns, conduct that resulted in the termination of Defendant's internship program in its news department.

23. Another reporter, Guy Junker, was arrested for propositioning an undercover police officer, an arrest that caused significant undue publicity, and was "inconsistent with [Defendant's] ethics." Defendant did not even discipline Junker, much less fire him.

24. Ms. Bell's posting of concern for the African American community stung by mass shooting was clearly and obviously not intended to be racially offensive.

25. Indeed, Defendant's management has acknowledged that Ms. Bell was neither a racist nor posting racially offensive material.

26. Defendant's articulated reason for firing Ms. Bell is pretextual.

### Count I
### 42 U.S.C. §1981

27. Plaintiff incorporates by reference the allegations in Paragraph 1 to 26 as if fully restated.

28.     Defendant fired Ms. Bell because of her race and therefore deprived Ms. Bell of the same right to make and enforce contracts as is enjoyed by white citizens in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981.

29.     Defendant's discharge of Ms. Bell was undertaken with reckless indifference to Plaintiff's federally protected right to make and enforce contracts irrespective of her race discrimination.

30.     As a direct and proximate result of Defendant's discriminatory treatment, Ms. Bell was fired from her job on or about March 30, 2016 and suffered the following injuries.

    a.  Great mental anguish and emotional strain;

    b.  Loss of income and benefits; and

    c.  Humiliation and inconvenience.

WHEREFORE, Plaintiff demand judgment against Defendant pursuant to 42 U.S.C. §1981 as follows:

    a.  That Defendant be permanently enjoined from discriminating against Ms. Bell or retaliating against Ms. Bell because she opposed race discrimination;

    b.  That defendant be ordered to reemploy Ms. Bell to the position she occupied on March 30, 2016, together with all benefits incident thereto, including but not limited to wages, benefits, training and seniority;

    c.  That Defendant be required to compensate Ms. Bell for the full value of wages and benefits she would have received had it not been for Defendant's illegal treatment, with interest thereon until the date Ms. Bell is offered re-employment into a position substantially equivalent to the one she occupied on March 30, 2016;

    d.  That Ms. Bell be awarded compensatory and punitive damages in an amount to be determined at trial;

    e.  That Ms. Bell be awarded against Defendant the costs and expenses of this litigation, and a reasonable attorney's fee; and

  f.  That Ms. Bell be awarded such further relief as this Court deems to be just and proper.

              Respectfully submitted,

              **Samuel J. Cordes & Associates**

              /S/ Samuel J. Cordes
              Samuel J. Cordes
              Pa.I.D. No. 54874

              245 Fort Pitt Boulevard
              Pittsburgh, PA 15222
              (412) 281-7991

              Attorney for Plaintiff